IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

GLORIA GILLARD                                                               PLAINTIFF

vs.                                             Civil No. 04-4118

JO ANNE B. BARNHART,
Commissioner, Social Security Administration                      DEFENDANT

## MEMORANDUM OPINION

**Factual and Procedural Background:**

      Gloria Gillard (hereinafter "Plaintiff"), has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her claims for a period of disability and disability insurance benefits (hereinafter "DIB"), pursuant to *§§ 216(i) and 223* of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423*. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

      The parties have filed appeal briefs (Doc. #5 & 6). The history of the administrative proceedings is contained in the respective briefs and will not be recited herein, except as is necessary.

      Plaintiff alleges that she is disabled due to: muscle spasm; obesity; gastric ulcers; rheumatoid arthritis; fluid retention and swelling; stiffness and pain in her joints; inability to sleep; anxiety/panic attacks; depression; fatigue; headaches; asthma; gastroesophageal reflux disease; and, chest pain. The issue before this Court is whether the decision of the Commissioner is supported by substantial record evidence.

The Plaintiff's administrative hearing was conducted on March 3, 2004 (T. 280-312), after which the Administrative Law Judge (hereinafter "ALJ"), issued a written decision, dated April 29, 2004 (T. 11-16).

Plaintiff then requested that the Appeals Council review the ALJ's decision (T. 7). Plaintiff did not submit any additional medical evidence to the Appeals Council. On July 27, 2004, the Appeals Council denied review (T. 4-6), thereby making the decision of the ALJ the final decision of the Commissioner. From that decision, Plaintiff appeals (Doc. #1, 5). This matter is before the undersigned by consent of the parties (Doc. #3).

**Applicable Law:**

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000); see also Craig v. Apfel 212 F.3d 433, 435-436 (8th Cir. 2000).* Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion. *See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).* In considering whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See Prosch, 201 F.3d at 1012.* We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome. *See id.*

In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).*

AO72A
(Rev. 8/82)

Even if this Court might have weighed the evidence differently, the decision of the ALJ may not be reversed if there is enough evidence in the record to support the decision. *Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992)*. It is well settled that proof of a disabling impairment must be supported by at least some objective medical evidence. *Marolf v. Sullivan, 981 F.2d 976, 978 (8th Cir.1992)*.

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 416.920(b)*. If the claimant is so involved, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments. *Id., § 416.920(c); see 20 C.F.R. § 416.926*. If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 416.920(d)*. If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 416.920(e)*. If so, benefits are denied; if not, the evaluation continues.

The fifth step involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given the claimant's age, education and work experience. *Id., § 404.920(f)*. If so, benefits are denied; if not, benefits are awarded.

AO72A
(Rev. 8/82)

In addition, whenever adult claimants allege mental impairment, the application of a special technique must be followed at each level of the administrative review process. See *20 C.F.R. § 416.920a(a)*.

The Commissioner is then charged with rating the degree of functional limitation, and applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d)*. Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels. See *20 C.F.R. § 416.920a(e)*.

**Discussion:**

Plaintiff seeks DIB benefits (T. 45-47). In order to obtain DIB benefits, Plaintiff must prove that she was disabled during the relevant time period. The relevant time period in this case begins with the alleged onset date and ends with the date Plaintiff was last insured.

Plaintiff herein alleged an onset date of June 1, 1995 (T. 45-47). Her date last insured was March 31, 2000 (T. 289). The ALJ's decision is dated April 29, 2004, over four years after Plaintiff's date last insured (T.289, 16). Therefore, the relevant time period for purposes of Plaintiff's application for DIB benefits, begins on June 1, 1995, Plaintiff's alleged onset date, and ends with Plaintiff's date last insured, March 31, 2000.

The Plaintiff does not dispute the accuracy of the above relevant time period[1] (Doc. #5). Although Plaintiff fails to challenge the dates of the relevant time period, she does make the following arguments on appeal: the ALJ erred in finding Plaintiff's allegations regarding her limitations are not totally credible; the ALJ erred in determining Plaintiff has the residual

---

[1]The ALJ also determined the relevant time period to be June 1, 1995, through March 31, 2000 (T. 11-16).

functional capacity to return to her past relevant work; the retroactive opinion of Plaintiff's treating physician was improperly disregarded; and, the ALJ's determination that Plaintiff was not disabled during the relevant time period is not supported by substantial evidence (Doc. #5).

The bulk of Plaintiff's brief is devoted to the argument that the opinion of Dr. Charles T. Marrow, her treating physician, was improperly disregarded. She makes this argument despite her failure to begin treatment with Dr. Marrow until over two years after the end of the relevant time period. On December 19, 2002, Dr. Marrow completed a form entitled MEDICAL OPINION RE: ABILITY TO DO WORK-RELATED ACTIVITIES (PHYSICAL) with respect to Plaintiff (T. 137-139). Therein, Dr. Marrow indicated that Plaintiff had the following maximum, physical abilities and/or restrictions: lift and carry 10 pounds occasionally and frequently; sit, stand and walk less than 2 hours in an 8-hour day with normal breaks; sit, walk and stand for 30 minutes before changing positions, with a walk of 30 minutes in duration between each activity; must have the opportunity to shift at will from sitting, standing or walking; does not need the ability to lie down at unpredictable intervals during a work shift; never twist, stoop (bend), crouch, or climb ladders; occasionally climb stairs; avoid all exposure to extreme cold, wetness, and humidity; and, avoid concentrated exposure to noise (T. 137-139). Dr. Marrow also indicated that Plaintiff's ability to handle (gross manipulation), finger (fine manipulation) and push/pull are adversely affected by her arthralgias. The medical findings upon which Dr. Marrow's opinion is based includes, osteoarthritis which he states, "predates March 2000 and has been more painful following an injury" (T. 138). Dr. Marrow also indicated that Plaintiff needs no assistive devices (T. 139). However, according to the medical records, Plaintiff first saw Dr. Marrow on July 25, 2002 (T. 121-136).

As the ALJ stated:

On August 27, 2002, the claimant filed an application for Disability Insurance Benefits. The claim was denied initially and on reconsideration, and a request for hearing was timely filed. The claimant appeared and testified at a hearing held on March 3, 2004, in Texarkana, Arkansas. Her husband and aunt also appeared and testified. Charles Barnette, attorney at law, represents the claimant in this matter. A vocational expert, Ken Waits, also appeared and testified.

The general issue is whether the claimant is entitled to a period of disability and Disability Insurance Benefits under ...the Social Security Act. The specific issue is whether she is under a disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

Additional issue is whether the claimant was disabled prior to March 31, 2000, the date she was last insured for Title II disability benefits. Upon reviewing all the evidence of record, the Administrative Law Judge concludes the claimant was not disabled within the meaning of the Social Security Act on or prior to this date (T. 11).

***

She stated that her back pain began in 1993 after she injured herself in a fall and after her first child was born. However, she continued to work until 1995 when she was laid off. She did not file a claim for disability benefits until August 2002. A review of the medical evidence shows little or no treatment for any medically determinable impairment prior to March 2000. A review of the medical records from her gynecologist shows that when she was seen in May 2000 she had no complaints. When she returned in May 2001 she described pain in her shoulder, neck, and back. She was given ibuprofen (citation omitted).

Records of emergency room visits to her local hospital show that she was treated for cold symptoms in Mary (sic) 1998. In December of that year she returned with complaints of chest pain. Cardiac pathology was ruled out and when she was treated for gastroesophageal reflux disease symptoms. She returned in November of 2002 following a motor vehicle accident.

The record reflects that she started seeing her current doctor, Charles Morrow (sic), M.D., on July 25, 2002 with complaints of generalized aches and pain and headaches (citation omitted). Dr. Morrow (sic) submitted a medical source statement in December 2002 (citation omitted). He found that she is limited to

lifting and carrying no more than 10 pounds and standing, walking and sitting less than 2 hours a day. In the form he completed he was asked to state what findings supported the limitations he described. He listed "osteoarthritis" which he added, "predates March 2000."

While the opinions of treating physicians are generally accorded great weight, they are not binding on the Administration when they are not supported by the evidence. In this case, the claimant did not even begin seeing Dr. Morrow (sic) until July 2002. Dr. Morrow (sic) has nothing other than the claimant's own self-serving statements and the physical findings noted at that time on which to base his opinion as to her condition prior to March 2002. A review of Dr. Morrow's (sic) own records fails to identify objective finding that could support his conclusion that the claimant is even currently limited to the degree he described. He treated her very conservatively and routinely, prescribing a common anti-inflammatory, Vioxx. He did not detect any motor or neurological deficits and offered no consultations, second opinions or a more aggressive treatment. Regardless, the Administrative Law Judge does not believe Dr. Morrow (sic) is in a position to offer credible probative evidence of her functional ability prior to March 2000 and his opinion in this regard is not entitled to a great deal of weight.

The claimant has alleged disabling symptomatology and her allegations have been considered pursuant to the guidelines of Social Security Ruly 96-7p and Polaski v. Heckler, 751 F.2d 943 (8th Cir. 1984) (subsequent history omitted)(T. 13).

The ALJ's assessment of Plaintiff's treatment history accurately reflects the evidence of record. Plaintiff treated with Dr. Marrow from July of 2002 through February of 2004 (T. 121-136, 137-139, 140-159, 273-273), long after the expiration of her insured status.

The evidence reflects that Plaintiff only saw her gynecologist, Dr. John S. Elkins, during the relevant time period. Said treatment consisted of annual pap smears and breast examinations (T. 88-94). On April 28, 1998, Plaintiff saw her gynecologist for a pap smear and had "no complaints" (T. 94). On May 20, 1999, she again appeared for her annual pap smear with "no complaints" (T. 94). Again on May 9, 2000, Plaintiff appeared with "no complaints" (T. 90). Dr. Elkins documented his impression as "[n]ormal exam" on all of those visits (T. 94,

-7-

90). In fact, Dr. Elkins did not note that Plaintiff experienced any difficulties of any kind until May 8, 2001, over 13 months after the end of the relevant time period (T. 90). On said date, Dr. Elkins noted that Plaintiff appeared for her routine examination complaining of shoulder, neck, upper back and leg pain during her menstrual cycle (T. 90). For the first time, Dr. Elkins noted his impression to be "[p]ain"(T. 88). It is noteworthy that Plaintiff reported that she experienced this pain only during her menstrual cycle. Indeed, Dr. Elkins gave Plaintiff Ibuprofen 800mg for this pain. The prescription had two refills (T. 88). However, Dr. Elkins did not anticipate the need to see Plaintiff again for another year (T. 88). Ibuprofen may be purchased over the counter in dosages of 200 mg per tablet, or may be prescribed in dosages of 800 mg per tablet. Ibuprofen is indicated for relief of mild to moderate pain. *Physicians Desk Reference*, pp. 1881-1883 (58th Edition 2004).

Dr. Elkins is the only physician who treated Plaintiff during the relevant time period. All of Dr. Elkins notes from the relevant time period indicate that Plaintiff made no complaints of any kind. Likewise, there are no objective findings from the relevant time period to support Plaintiff's claim for benefits, nor do any mental health treatment records exist.

Although Plaintiff alleges that she suffered from rheumatoid arthritis during the relevant time period, the evidence indicates that she had no history of said illness. Dr. Marrow diagnosed Plaintiff with rheumatoid arthritis in 2002 or 2003 (T. 288). No doctor had previously diagnosed Plaintiff with arthritis and the evidence reveals that Plaintiff failed to complain of any pain or swelling during the relevant time period.

Although Plaintiff's husband alleged at hearing that the Plaintiff only saw her gynecologist during the relevant time period due to their poor financial status, the ALJ's

AO72A
(Rev. 8/82)

decision to disregard this explanation is supported by substantial evidence (T. 303, 14). In doing so, the ALJ properly relied upon the testimony of Mr. Fernando Gillard, Plaintiff's husband. At the time of hearing, Mr. Gillard had been a city employee for 17 years and carried medical insurance on his wife throughout his employment (T. 301-303). The ALJ properly considered the allegations of a lack of financial means.

Generally, if a claimant does not follow a prescribed treatment plan without a good reason, he or she will not be found disabled. *20 C.F.R. § 416.930(b) (1984)*. However, the lack of financial resources to pay for medical treatment and/or medication may justify the failure to pursue treatment or follow a treatment plan. *Brown v. Heckler 767 F.2d 451, 452 (8th Cir.1985); Tome v. Schweiker, 724 F.2d 711, 714 (8th Cir.1984).* Certainly, the failure to follow a prescribed course of treatment may be excused by a plaintiff's lack of funds. *Tome v. Schweiker, 724 F.2d at 714.* However, here the ALJ properly discusses and discounts the impact of plaintiff's alleged lack of finances on her ability to access treatment. Therefore, the ALJ has satisfied his obligation to consider the allegation of a lack of financial means with which to obtain medical treatment.

Plaintiff also raised the issued that the ALJ erred in conducting an improper *Polaski*[2] analysis (Doc. #5, p.5). In determining whether the ALJ properly disregarded Plaintiff's subjective complaints of pain, the Court must determine if the ALJ properly followed the requirements of *Polaski v. Heckler, 739 F.2d at 1322,* in evaluating her pain and credibility.

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full

---

[2]*Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)* (subsequent history omitted).

> consideration to all of the evidence presented relating to subjective complaints,
> including the claimant's prior work record, and observations by third parties and
> treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints <u>solely</u> on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler, 739 F.2d at 1322 (emphasis in original)*.

In addition to the requirement that the ALJ consider the Plaintiff's allegations of pain, he also has a statutory duty to assess the credibility of plaintiff and other witnesses. *Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992)*. The ALJ may discredit subjective complaints of pain inconsistent with the record as a whole. *Ownbey v. Shalala, 5 F.3d 342, 344 (8th Cir. 1993)*.

Here, the ALJ conducted an in-depth *Polaski* analysis of the evidence which either existed during, or pertained to the relevant time period (T. 11-16). The ALJ properly addressed and discussed, Plaintiff's: activities of daily living; duration, frequency and intensity of Plaintiff's pain; dosage, effectiveness and side effects of medication; and, functional restrictions. The ALJ's *Polaski* analysis is as thorough as the evidence permits, and is supported by the administrative record.

To prove disability, plaintiff must establish a physical or mental impairment by medical evidence consisting of signs, symptoms and laboratory findings, rather than by only her own statements of her symptoms. See *20 C.F.R. § 404.1508.*

AO72A
(Rev. 8/82)

The record does not establish evidence of disability, as defined by the Act, during the relevant time period. Nor does the record evidence contain substantial proof of Plaintiff being disabled before or after the relevant time period. This is particularly true in light of the Plaintiff's sparse medical treatment and lack of any allegations of disability during the relevant time period.

Upon a through review of the record, it is clear that the evidence from the relevant time period, offered to establish disability, lacks substantiality. The burden is on the Plaintiff to prove her disability. *Sykes v. Bowen 854 F.2d at 285*. Here, Plaintiff has failed to carry her burden.

## **Conclusion:**

After a careful review of the entire record, this Court finds there is substantial evidence to support the decision of the ALJ. Accordingly, the Commissioner's decision should be affirmed, and the Plaintiff's complaint dismissed with prejudice. A judgment incorporating these findings will be entered pursuant to F.R.C.P. 52 and 58.

ENTERED this 12th day of September, 2005.

/s/ Bobby E. Shepherd
Honorable Bobby E. Shepherd
United States Magistrate Judge

AO72A
(Rev. 8/82)